UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| TONI SPILLMAN, | * CIVIL ACTION NO. 3:10-CV-00349-BAJ-SCR |
| Individually and on Behalf of | * |
| the Class, | * |
| | * |
| VERSUS | * JUDGE BRIAN JACKSON |
| | * |
| | * |
| RPM PIZZA, INC. and | * MAGISTRATE JUDGE RIEDLINGER |
| DOMINO'S PIZZA, LLC | * |

*************************************************************************

# OPPOSITION TO MOTION TO DISMISS
# FILED BY DOMINO'S PIZZA, LLC

MAY IT PLEASE THE COURT:

TONI SPILLMAN, individually and on behalf of the Class (collectively "Spillman")

files this memorandum in opposition to the second motion to dismiss filed by defendant

DOMINO'S PIZZA LLC ("Domino's").[1]

---

[1] R.Doc. 63.  To the extent this Motion does not raise certain issues addressed in Domino's first Motion to Dismiss (R.Doc. 20), plaintiff incorporates her opposition to that Motion (R.Doc. 22).

## I.      FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a pre-recorded phone message marketing campaign targeting residents of Louisiana, Mississippi and Alabama.  Domino's Pizza LLC ("Domino's") is a nation-wide pizza chain whose franchisee in the local market is RPM Pizza, Inc. ("RPM").

Between May 20, 2006 and May 20, 2010, RPM and/or Domino's and/or an entity on their behalf made thousands of pre-recorded phone calls to residents of Louisiana, Mississippi and Alabama.  These messages were advertisements for Domino's pizza specials that directed the recipients to call their local Domino's to take advantage of these specials.  However, it is unknown who transmitted the message campaigns, and only discovery will allow plaintiff to determine that issue.

On behalf of a class of persons who received these prerecorded phone messages from either RPM or Domino's, Spillman filed this class action suit alleging violations of the TCPA.  In response to the initial Complaint, Domino's and RPM each filed Motions to Dismiss.[2]  Ultimately, plaintiff agreed to amend her Complaint and did so three times.  The operative complaint, primarily encompassing the allegations contained in the Second Supplemental and Amending Complaint,[3] is the Third Supplemental and Amending Complaint ("TAC").[4]

_____

[2]  See R.Doc. 20 and 16, respectively.

[3]  R.Doc. 57.

[4]  R.Doc. 58-2.

Domino's now seeks to dismiss the TAC claims on a variety of bases. However, for the following reasons, they all fail and this Motion to Dismiss should be denied.

## II.   LAW AND ARGUMENT

### A.   SPILLMAN PLEADS SUFFICIENT FACTS TO STATE A PLAUSIBLE CLAIM OF LIABILITY UNDER *TWOMBLY* STANDARDS

Generally, "[m]otions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted."[5] The district court "must accept as true those well-pleaded factual allegations in the complaint"[6] and "[t]he complaint must be liberally construed in favor of the plaintiff."[7] A motion to dismiss must be denied if the complaint states sufficient factual allegations that, when taken as true, state a plausible claim for relief "above the speculative level."[8]

As a catchall argument, Domino's again claims plaintiff fails to sufficiently plead facts necessary to state a claim. While Domino's claims the Complaint is still "woefully deficient" because it is "chock-full of conclusions and singularly lacking in facts,"[9] any reasonable person can conclude the allegations in the Complaint sufficiently put Domino's on notice of what is claimed. While this reason alone justifies denial of this Motion, plaintiff

---

[5]  *Xavier v. Belfor USA Group, Inc.*, 2009 WL 411559, *4 (E.D. La. 2/13/09).

[6]  *Id.* at *4.

[7]  *Anderson v. U.S. Department of Housing and Urban Development*, 2010 WL 1407983, *5 (E.D. La. 3/25/10).

[8]  *Xavier, supra.* at *4.

[9]  See Domino's Memorandum in Support of Motion to Dismiss, R.Doc. 63-2, at p. 13.

alternatively seeks the opportunity to amend her Complaint to cure any deficiencies, to the extent they exist.

> **1.     The United States Supreme Court in *Bell Atlantic v. Twombly* Provides the General Standards for Sufficient Pleading in Federal Court.**

Under Federal Rule 8's general requirements a complaint must contain:

> (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.

The United States Supreme Court in *Bell Atlantic Corp v. Twombly* stated the test for sufficient pleading under Rule 8 – the plaintiff must plead "a 'plausible' set of facts demonstrating entitlement to the relief requested."[10]  To meet the *Twombly* standard "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[11]  This is not a probability standard, but, "instead, 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]'" of plaintiff's burden of proof.[12]  "A claim has facial plausibility when the

---

[10]  26-JAN Am. Bankr. Inst. J. 18, p. 2.  See also, *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007)  ("[W]e hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.").

[11]  *Id.* at 1965.

[12]  *Fonovisa, Inc. v. Does 1-9,* 2008 WL 919701, *3 (W.D. Pa. 4/3/08), citing, *Phillips v. County of Allegheny,* 515 F.3d 224, 232 (3d Cir. 2008).

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13]

Twombly did not present a heightened pleading standard.  Instead, *Twombly* merely "explicates" the general standard stated in Rule 8(a)(2).[14]  As stated by the Supreme Court:

> [W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is *plausible* on its face.[15]

A plaintiff is not required to state any and all facts proving his or her entitlement to relief.  The statement of facts in a complaint "need only give the defendant fair notice of what the . . . claim is and grounds upon which it rests."[16]  Spillman met this standard and this Motion to Dismiss should be denied.

### 2.   The Complaint States Sufficient Facts to Present a Plausible Case Against Domino's.

Under *Twombly*, the facts presented by Spillman must be "enough to raise a right to relief above the speculative level."[17]  Domino's argues that Spillman fails to plead facts to present one critical element of her cause of action – that Domino's had control over the marketing campaign of RPM that included the use of unsolicited telemarketing in violation

---

[13] *Ashcroft v. Iqbal*, 129 S Ct. 1937, 1949, 173 L.Ed. 868 (2009).

[14] *Dardar v. City of Morgan City*, 2010 WL 2025497, *3 (W.D. La. 4/30/10), <u>citing</u>, *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 258 (5th Cir. 2009).

[15] *Dardar,* 2010 WL 2025497 at *3, <u>citing</u>, *Twombly,* 550 U.S. at 569.

[16] *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (internal quotation marks omitted).

[17] *Twombly*, 550 U.S. at 555.

of the TCPA.  However, a fair reading of the complaints shows that Plaintiff pled sufficient facts to present Domino's responsibility for the marketing and advertising campaign at issue. These facts are sufficient to meet *Twombly*'s plausibility standard.

        **a.**      **Plaintiff's Complaint Pleads a Plausible Case of Franchisor Liability.**

Franchisors can be found liable for the actions of their franchisees under general agency/mandate principles. "A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal."[18]  In a contract of mandate, "[t]he principal may confer on the mandatary general authority to do whatever is appropriate under the circumstances."[19]

A principal is not generally liable for the torts of the mandatary unless the principal exercises sufficient control over the mandatary's actions to rise to the level of a master/servant relationship.[20]  Courts in various jurisdictions have found that control over a franchisee can be sufficient to trigger vicarious liability and can exist in various forms, including:

> control over franchisee's employees, imposition of uniform accounting and reporting procedures, prescribed hours of operations, restricted sources of supply, restricted product lines, the promotion of uniform franchisee marketing

---

[18]  La-C.C. art. 2989.

[19]  La-C.C. art. 2994.

[20]  *Allstate Ins. Co. v. Veninata,* 2006-1641 (La. App. 4 Cir. 11/7/07), 971 So. 2d 420, 425.

6

activities, and payment by the franchisor or the franchisee's taxes.[21]
Such control over a franchisee would usually be found in the franchise agreement. Importantly, the extent of control, including but not limited to the existence of these specific factors, is unknown without any discovery.

In the instant case, Spillman does not know the extent of Domino's control over the advertising and marketing campaigns of RPM because discovery has not been conducted. This is particularly true with the regard to the prerecorded phone message campaign that is the subject of this suit.  Such information should be found in the franchise agreement of which Spillman has not yet received a copy.  Spillman cannot make any specific allegations in her complaint regarding the amount of control exercised over RPM's marketing and advertising by Domino's without at least a review of the franchise agreement.  Notably, Domino's makes no mention in its motion to dismiss of the extent of control that it may or may not possess over the advertising activities of its franchisees.

However, Spillman did provide specific allegations regarding the relationship between

---

[21]  Legal Aspects of Selling and Buying § 9:85 (3d ed.).  See e.g., *Drexel v. Union Prescription Centers, Inc*., 582 F.2d 781, 788 (3d Cir. 1978) (Court found that a franchisor's retention of the right to control numerous facets of the franchisee's business operation, ranging from the appearance and contents of the store; its advertising and promotional programs; its accounting, inventory and record-keeping systems; the color of the delivery trucks; and the requirement that the franchisee meet a certain franchisor quality standard were all evidence of franchisor control over the franchisee); *Billops v. Magness Constr. Co.*, 391 A.2d 196 (De. 1978) (Court found that the franchisor's issuance of a detailed and, in parts, mandatory operating manual that was incorporated into the franchise agreement and provided standards for identification, advertising, front office procedures, cleaning and inspection services, and other standards was evidence of the franchisor's control over the franchisee).

Domino's and RPM which serve to meet the "plausibility" test stated in *Twombly*. As stated in the Second Amended Complaint:

> In addition, DOMINO'S PIZZA, LLC ("Domino's") is also responsible for RPM's violation of the TCPA because of and through its relationship with RPM. In particular, Domino's is the national franchisor of Domino's Pizza stores. RPM is the franchisee of Domino's Pizza stores in Louisiana, Mississippi and Alabama. By virtue of this franchise or agency relationship, RPM owes an obligation to engage in advertising and marketing campaigns to sell Domino's pizzas. Those campaigns directly benefit Domino's according to the terms of the franchise agreement. Accordingly, the prerecorded phone message advertisements directly benefit both RPM and Domino's. As a result, both RPM and Domino's are responsible for these violations. Moreover, all of the prerecorded phone messages that are the subject of this suit identified "Domino's" as the person responsible for placing them.[22]

The complaints also outline that it was either Domino's, RPM or both that devised the marketing campaign that utilized the unsolicited phone call advertisements. And, it is alleged that either Domino's, RPM or someone on their behalf placed the actual phone calls. This statement pleads Domino's activity in the marketing campaign and a relationship with RPM that indicates control.

These statements present enough facts "to raise a reasonable expectation that discovery" could provide the requisite amount of control necessary for Domino's to be vicariously liable for the actions of RPM.[23] Thus, the complaint states sufficient facts under *Twombly* to present a case for franchisor liability.

---

[22] R. Doc. 57.

[23] *Twombly*, 550 U.S. at 556.

8

**b.     Plaintiff Also Specifically Pleads Independent Liability of Domino's.**

Spillman also pleads that Domino's, not RPM, may have made the phone calls that are at issue in this case – a fact Domino's does not address.  In the Second Amended Complaint, Spillman alleges that the Defendants, either Domino's or RPM, made unsolicited telephone call advertisements to Spillman and other class members.  The script of the telephone call provided as follows:

> Order Domino's VIP carry out special, and get any medium one topping hand-tossed pizza for $3.99.  That's right, $3.99 medium one-topping carry out.  Order three or more, and get them delivered.  If you would like to order now, press "1" to be connected to Domino's or call us later today or on Wednesday, and ask for the $3.99 special.  Press "1" now to be connected to your Domino's store or call Domino's later today or on Wednesday, and ask for the $3.99 special.  This intrastate call meets all FTC and FCC guidelines as of September 2009.  If you would like to opt out of future VIP specials, please press "9" now or dial 877-207-3770 from your called number.[24]

The fact that Domino's, and not RPM, is specifically named in the advertisement provides evidence that it was Domino's, not RPM, that made the phone calls.  The problem at this stage in the litigation is the party responsible for the phone message campaign is simply unknown.  Only discovery, or an admission by the parties, can resolve that issue.

Further, the complaints together outline the following actions by Domino's and/or RPM:

1.     Domino's, RPM, and/or someone on their behalf advertised their services by placing thousands of prerecorded phone calls using automatic phone dialing equipment to residential and cellular phone

---

[24]  R. Doc. 57.

subscribers.

2.    These subscribers, including Spillman and the other class members, did not give prior consent to receive these advertisements.  The members of the class did not provide their cellular phone numbers to Domino's and/or RPM in any way.

3.    The pre-recorded phone message calls were received on a weekly basis between the time period of May 20, 2006 and May 20, 2010.  And, Spillman received numerous calls within several months before filing the Complaint.

4.    The nature of the actual damages because of these unsolicited advertisements specifically included charges arising from unsolicited use of cellular phone minutes.

Domino's is liable for its own acts that resulted in a violation of the TCPA.  If Domino's, in fact, was the party that sent the advertisements, then, it would be wholly liable for the statutory damages provided in the TCPA.   Spillman pleads sufficient facts in her complaints that Domino's was the entity that transmitted the telephone advertisements and, as such, is in violation of the TCPA.

### c.    Allegations are Clear Regarding the Receipt of the Phone Calls

Domino's still maintains that plaintiff fails to allege when the messages were received, what they stated or from what numbers they were sent.  However, the TAC clearly outlines the necessary facts to put Domino's on notice of the claims.  Certainly, these allegations meet the *Twombly* standards.

What is ironic, and disingenuous, about this argument is that Domino's (or RPM) is in sole possession of the documents that will verify plaintiff received many of these

10

prerecorded phone messages. Yet, instead of acknowledging they were sent and received by plaintiff, Domino's seeks dismissal of the claims based on a procedural deficiency. Spillman alleged she received at least one of prerecorded phone messages, and unfortunately does not possess the documentation to prove that it occurred by virtue of the method of Domino's violation (by prerecorded phone message instead of by text message or fax advertisement). Domino's should not allowed to avoid liability for that reason.

> **d.      Further Discovery Is Needed to Determine the Responsibility of Domino's.**

At the very least, discovery is necessary to address the issues raised by Domino's. With regard to the franchisor and vicarious liability arguments, discovery is necessary to determine the relationship between Domino's and RPM. This discovery would include information related to any control exhibited by Domino's over RPM, information that is exclusively maintained by Domino's and RPM. The substance of the messages sent by Defendants (which fail to identify the transmitter), and the nature of the relationship between franchisor and franchisee, justify the need for discovery to develop these issues.

Likewise, RPM and Dominos seek to obtain dismissal of these claims because plaintiff does not have physical proof she received these prerecorded phone messages. That means she did not tape record the messages or physically write down the substance or date and time of receipt. However, all of this information is certainly maintained by RPM, Domino's or their vendors. It is unfair to rely on the absence of information when that information is maintained exclusively by the party relying on its absence. For this reason,

discovery is necessary to further address these issues.

> **e.  Plaintiffs are entitled to amend in the event the Court finds that the *Twombly* standards have not been met.**

In the event the Court concludes that the pleading requirement is not met, plaintiff should be granted the opportunity to amend the Complaint.[25]  Thus, alternatively, if the Complaint fails to meet the *Twombly* standards, Plaintiff should be afforded leave to amend the petition in lieu of dismissal.

## B.   STATUTE OF LIMITATIONS FOR TCPA CLAIMS IS FOUR YEARS

Domino's also maintains its claim that the applicable statute of limitations for TCPA claims is only one year.  However, the overwhelming majority of cases addressing this issue conclude the general, four-year statute of limitations imposed by 28 U.S.C. § 1658 applies instead.   In fact, this Court, and other federal courts, have repeatedly concluded the applicable statute of limitations for TCPA claims is four years.

> **1.  The TCPA is a Federal Statute; thus, Federal Rules Regarding Statutes of Limitations Apply.**

Domino's claims that because states have exclusive jurisdiction over TCPA claims their corresponding state statutes of limitations apply. However, the TCPA is a federal statute.  Even though a federal law may not be the source of jurisdiction, although this

---

[25]  *Great Plains Trust Co. v. Morgan Stanley Dean Witter Co.*, 313 F. 3d 305, 330 (5th Cir. 2002).

12

concept is debatable, it is still an issue of federal law.[26]   Accordingly, both federal and state

courts must apply federal law, including federal statute of limitations found in 28 U.S.C. §

1658 to TCPA claims.[27]

The Supreme Court described §1658 as supplying a general, 4-year statute of

limitations for any federal statute that was enacted without one of its own after December 1,

1990.[28]   In *Jones v. R.R. Donnelley & Sons Company*,[29] the Supreme Court found that the

central purpose of §1658 was to minimize the need for borrowing state statute of limitations

because of the inherent uncertainty such a practice generated.[30]   It also found that Justice

Scalia, in his concurring opinion in *North Star Steel*, "captured the basic purpose of §1658

---

[26] *Kenro, Inc. v. Fax Daily Inc.*, 904 F.Supp. 912, 914 (S.D. Ind. 11/8/95), citing *Franchise Tax Bd. of California v. Construction Laborer's Vacation Trust for Southern California*, 463 U.S. 1, 11, 103 S.Ct. 2841, 77 L.E.d.2d 420 (1983) (a suit arises under the law that creates the cause of action); *See also, Grantham v. Avondale Industries, Inc.*, 964 F.2d 471, 474 (5th Cir. 1992)(the *Erie* doctrine does not apply in matters governed by the federal Constitution or by acts of Congress).

[27] *DelCostello v. International Broth. of Teamsters,* 462 U.S. 151, 160, 103 S.Ct. 2281, 76 L. Ed. 2d 476 (1983)(the choice of a limitations period for a federal cause of action itself is a question of federal law); *Holmberg v. Armbrecht,* 327 U.S. 392, 394, 66 S.Ct. 582, 90 L.Ed. 743 (1946)(stating, "the considerations that urge adjudication by the same law in all courts within a State when enforcing a right created by that State are hardly relevant for determining the rules which bar enforcement of [a] right created not by a State legislature but by Congress"); *Prudence Realization Corporation v. Geist*, 316 U.S. 89, 95 62 S.Ct. 978, 86 L.Ed. 1293 (1942)(holding that in the interpretation and application of federal statutes, federal not local law applies); *Morris v. Transworld Drilling Company,* 365 So.2d 46, 47 (La. App. 3 Cir. 1978)(the forum state is obliged to follow the substantive federal law in a claim based on a federal cause of action).

[28] *North Star Steel Co. v. Thomas*, 515 U.S. 29, 34, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995).

[29] 541 U.S. 369, 124 S.Ct. 1836, 158 L.Ed. 2d 345 (2004).

[30] *Id.* at 380.

when he observed that a uniform nationwide limitations period for a federal cause of action is always more appropriate than a rule that applies in some States but not in others."[31]

The Supreme Court decided that "a cause of action [that] arises under an Act of Congress enacted after December 1, 1990 - [sic] is governed by §1658's 4-year statute of limitations-if the plaintiff's claim against the defendant was made possible by the post-1990 enactment."[32]  This construction was adopted because the Supreme Court determined it best served "Congress' interest in alleviating the uncertainty" caused by borrowing state statutes of limitations.[33]

Further, the TCPA's legislative history on private causes of action does not support a finding that the language "if otherwise permitted" requires the pre-1990 practice of limitation borrowing.[34]  The sponsor of the bill, in addressing the issue, stated that "the bill does not, because of constitutional constraints, dictate to the States which court in each State shall be the proper venue for such an action . . .Nevertheless, it is my hope that states will make it as easy as possible for consumers to bring such action, preferably in small claims court."[35]  The purpose of the TCPA private right of action is to facilitate and simplify TCPA

---

[31] *Id.* at 381.

[32] *Id.* at 382.

[33] *Id.*

[34] *Zelma v. Koniko*, 379 N.J.Super. 480, 486, 879 A.2d 1185 (N.J. Supr. 8/8/05) .

[35] *Accounting Outsourcing, LLC v. Verizon Wireless Personal Communications, L.P.*, 329 F.Supp. 2d 789, 799 (M.D. La. 2004), *citing*, 137 Cong Rec. 516204-16204.

litigation.[36]  By using state statute of limitations based on analogous state causes of action

only complicates the recovery of damages under the TCPA.[37]

> **2.     Overwhelming Majority of Courts Conclude the Applicable Statute of Limitations is Four Years for TCPA Claims.**

Other jurisdictions follow the *Jones* decision and apply its rulings to TCPA claims.

In *Sznyter v. Malone*, the court found the ambiguous statement in the TCPA "if otherwise

permitted by the laws or rules of court of a State" did not prohibit the application of the

statute of limitations in §1658.[38]  After a full analysis of the Supreme Court's ruling in *Jones*,

the court found that the application of state statutes of limitations did not further the policy

in *Jones* of providing a uniform statute of limitations for all causes of action arising out of

federal law.  Under the clear language of §1658, it applies to the TCPA because it is a federal

statute enacted after 1991 that has no express prohibition to the application of §1658.  Thus,

the court found that the application of §1658 was most in line with the Supreme Court's

holding in *Jones.*

The same result was found in *Worsham v. Fairfield Resorts, Inc.* from the Maryland

Court of Appeals.[39]   Like *Sznyter*, the *Worsham* court looked to the *Jones* decision to

determine if §1658 applied to TCPA claims.  The court found that the TCPA fell within the

---

[36]  *Zelma*, *supra* at 486.

[37]  *Id.*

[38]  155 Cal.App.4th 1152, 66 Cal.Rptr.3d 633 (Cal. App. 4 Dist. 2007).

[39]  188 Md.App. 42, 981 A.2d 24 (Md. App. 2009).

clear language of §1658 and was not expressly prohibited.  The court points out that if Congress intended to prohibit the application of §1658 to the TCPA, then it could have provided such a prohibition directly in the statute:

> The TCPA was enacted just a few months after Congress adopted a provision that was supposed to provide a uniform statute of limitations for all subsequently enabled federal causes of action. It seems highly unlikely that, when Congress enacted the TCPA in 1991, it intended to engender more of the same problems that were caused by borrowing state limitations provisions prior to the 1990 enactment of 28 U.S.C. § 1658. And if Congress, in fact, had intended to exempt actions under the TCPA from the uniform federal statute of limitations, Congress could have chosen language that made such an intent more evident, or better yet, explicit.[40]

The New Jersey Superior Court also recognized the broad application of §1658.  In *Zelma v. Koniko*, the court found that the central purpose of §1658 was to relieve courts from borrowing state statute of limitations for federal statutes.  The problems surrounding "limitation borrowing" spurred the enactment of the federal "catchall" limitation.  This purpose necessitated a narrow reading of §1658's phrase "[e]xcept as otherwise provided by law" and a similar narrow reading of the TCPA's language "if otherwise permitted by the laws or rules of court of a state."  This ambiguous language is insufficient to undercut the application of §1658.  Further, "limitation borrowing" would unnecessarily complicate the TCPA proceedings in contrast to Congress' obvious intent to provide a simple litigation process for potential claimants.  Thus, the court found that the federal catchall statute of limitations was the most appropriate for TCPA claims.

---

[40] *Id.* at 56.

This same result was found by the United States District Court for the Northern District of Illinois in *Benedia v. Super Fair Cellular, Inc.*[41]  That Court identified several questions that suggest the federal "catchall" limitation is appropriately applied to TCPA claims: (1) it is unclear if a state court would apply a state statute of limitation rather than § 1658, (2) even if state law controlled, a state court could select a different statute of limitations and create the same uncertainly raised by the defendants' interpretation, and (3) a state's Legislature could opt-out of the TCPA altogether.  As a result of this analysis, the Court concluded the only appropriate statute of limitations for TCPA claims is four years according to § 1658.

Other examples of courts applying the federal four year catchall statute of limitations to the TCPA include: *Jemiola v. XYZ Corporation*, 802 N.E.2d 745, 748 (Oh. Ct. Cmn. Pleas - Cuyahoga 12/11/03) ("The statute of limitations for plaintiff's claims is four years under the TCPA . . ."); *Gottlieb v. Carnival Corporation*, 595 F.Supp.2d 212, 223 (E.D.N.Y. 2/5/09), *rev'd on other grounds*, 635 F.Supp.2d 213 (E.D.N.Y. 7/21/09) (citations omitted) ("Federal statutes enacted after December 1, 1990 that do not contain statutes of limitations are subject to 28 U.S.C. § 1658 which provides for a general limitations period of four years. This statute is as clear as it can be: 'Absent an express statute of limitations, or a clear direction to consult state law,  § 1658 controls,' and it does so here.").  A number of other

---

[41]  2007 WL 2903175 (N.D. Ill. 2007).

courts came to the same conclusion.[42]  Likewise, cases applying other federal statutes enacted

after 1991 further support a finding that the four year statute of limitations applies to claims

under the TCPA.[43]

Courts that applied state statutes of limitations to TCPA claims provide no guidance

to this court because these courts did not apply the analysis of the Supreme Court in *Jones*.

For example, in *Chair King, Inc. v. GTE Mobilenet*, the court applied the Texas statutes of

limitations to a TCPA claim.[44] However, as recognized by the *Zelma* court, the *Chair King*

decision was issued only three days after *Jones* and makes no mention of the Supreme

Court's well-founded analysis.[45]  *Chair King*'s failure to consider or apply the Jones analysis

prohibits its consideration on this issue.[46]

---

[42]  See e.g., *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, — F.Supp.2d —, 2010 WL 3212040 (E.D. Wis. 2010) (parties and Court agree 4 year SOL applies to TCPA claims); *Joffe v. Acacia Nat'l Mtg. Corp.*, 2007 WL 5526903 (Az. Super. 2007) (4 year SOL applies); *Speer v. Tony Riso Co.*, 2007 WL 1157135 (Ohio C.P. Mar. 30, 2007) (4 year SOL applies); *Whiting Corp. v. SunGard Corbel, Inc.*, 2005 WL 5569575 (Ill. Cir. 2005) (§1658 applies to TCPA claims);  *Grady v. OTC Investor's Edge*, 2003 WL 22828294 (Ohio C.P. 2003) (SOL for TCPA claims is 4 years).

[43]  See e.g., *Turner v. Miller Transporters, Inc.*, 876 So.2d 848 (La. App. 1 Cir. 2/23/04). (4 year SOL under §1658 applied to claim alleging violation of 49 U.S.C. §14704(a)(2), which does not have its own SOL); *E. Spire Communications, Inc. v. Baca*, 269 F.Supp.2d 1310 (D.N.M. 2003) (§ 1658 applied to violation of the federal Telecommunications Act-47 U.S.C.A. § 252(e)(6))

[44]  135 S.W.3d 365 (Tex.App.-Houston 5/6/04), *rev'd on other grounds*, 184 S.W.3d 707 (Tex. 2/3/06).

[45]  *Zelma*, *supra.* at 489.

[46]  Other courts that fail to follow the *Jones* analysis are similarly distinguishable: *David L. Smith and Associates, LLP v. Advanced Placement Team, Inc.*, 169 S.W.3d 816 (Tex. App. - Dallas 8/24/05); *Edwards v. Emperor's Garden Restaurant*, 130 P.3d 1280 (Nev. 3/30306).

Domino's argument has been specifically and repeatedly rejected by federal and state courts across the country.  Its Motion to Dismiss should be denied.

### 3. This Court has Repeatedly Certified TCPA Classes that Include Four Years of Claims

On several prior occasions, this Court certified TCPA classes including claims over a four year period.[47]  Surely, had the Court thought the applicable statute of limitations was only one year it would not have done so.  These certifications were in the context of both a contested Motion for Class Certification and the certification of settlement classes.  On every occasion,  this Court certified TCPA classes that included claims over a four year period.  Never once was a certified class limited to only one year.  These rulings provide overwhelming support, in addition to the many cases cited in the prior section, that the applicable statute of limitations period for TCPA claims is four years.

---

[47]  See e.g., *Gene and Gene, LLC v. Biopay, LLC*, 2009 WL 6598001 (M.D. La. 2009) (class of recipients of faxes over 4 year period certified; reversed on grounds unrelated to statute of limitations);  *Planet Recess, Inc. v. Harvest Builders International, LLC*, Case No. 08-126 (M.D.La.-R.Doc. 32) (settlement class including four years of claims); *Accounting Outsourcing, LLC v. Verizon Wireless Personal Communications, L.P.*, 2007 WL 7087615 (M.D. La. 2007) (settlement class spanning four years certified);  *Accounting Outsourcing, LLC v. Verizon Wireless Personal Communications, L.P.*, Case No. 03-161 (M.D.La. 1/29/07-R.Doc. 476) (certification of class including claims over 4 year period); *Leroy Koschel v. Brasseler USA, Inc.*, Case No. 07-586 (M.D.La.-R.Doc. 23) (settlement class including four years of claims);  *Gene and Gene, LLC v. Biopay, LLC*, 240 F.R.D. 239 (M.D. La. 2006) (class of recipients of faxes over 4 year period certified; reversed on grounds unrelated to statute of limitations); *Survey Communications, Inc. v. Corporate Express, Inc.*, Case No. 05-40 (M.D.La.-R.Doc. 37) (settlement class including four years of claims); *Survey Communications, Inc. v. Mastermans, LLP*, Case No. 04-829 (M.D.La.-R.Doc. 27) (settlement class including four years of claims); *Accounting Outsourcing, LLC v. Monroe Systems for Business, Inc.*, Case No. 03-755 (M.D.La.-R.Doc. 41) (settlement class including four years of claims); *Dominion Motor Cars v. Satellink Commuications, LLC*, Case No. 03-173 (M.D.La.-R.Doc. 37) (settlement class including four years of claims).

19

### C. **SPILLMAN HAS STANDING TO ALLEGE CLAIMS FOR PRERECORDED PHONE MESSAGES IRRESPECTIVE OF HOW THEY WERE RECEIVED**

Domino's latest challenge to the amended Complaint is to claim plaintiff cannot allege claims, even as a class representative, on behalf of recipients of prerecorded phone messages received both by a cell phone and a residential phone line.

### 1. **Plaintiff's Claims need not be Identical to Claims of Other Class Members**

The appropriate issue here is not whether plaintiff has standing, but whether her claim is typical of the claims of the other absent class members in compliance with F.R.C.P. 23(a)(3). Domino's does not challenge whether plaintiff received one or more prerecorded phone calls on her cell phone. Rather, it challenges whether plaintiff, as the recipient of at least one phone message on her cell phone, can also represent other recipients of phone messages made to their home phone.

In this instance, the named plaintiff and class representative certainly has standing to bring a claim under the TCPA for the receipt of at least one prerecorded phone message sent by the defendants. Obviously, if plaintiff had never received a prerecorded phone call from defendants she would have no standing. However, that is not what Domino's is alleging. Rather, it claims she has no standing to represent other class members who received prerecorded phone messages on their *home phone*.

However, calls made to cell phones and home phones are equally unlawful, resulting in the same damages. Presumably, although no discovery has occurred to definitively answer

20

this question, the auto-dialing machine used to transmit these phone messages did not discriminate between cell phone numbers and home phone numbers.  Instead, the machine utilized by the transmitter simply went down the list of numbers, one by one, and transmitted the same prerecorded phone message to each one, regardless of the type of phone number.

Importantly, Rule 23(a)(3) requires only that the claim of the representative be typical of the claims of members of the proposed class.  It does not require perfectly identical claims; rather, what is required is that the claims be based upon the same legal or remedial theory and that there be no conflict of interest between the representative and class members.[48] The Fifth Circuit has held that the test for typicality is not demanding.[49]  The test for typicality focuses "on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent."[50]  Typicality does not require completely identical claims.[51]  Rather, what is critical is whether the class representative's claims have fundamentally the same essential characteristics of those of the putative class.[52] When the claims permeate from a similar course of conduct or transaction and share the same

---

[48] *Gonzales v. Cassidy*, 474 F.2d 67, 71 n. 7 (5th Cir. 1973).

[49]  *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir.2002) (*citing James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir.2001)).

[50] *Flanagan v. Ahearn* (*In re Asbestos Litig.*), 90 F.3d 963, 975 (5th Cir.1996).

[51] *James*, 254 F.3d at 571.

[52] *Id.*

21

legal theory, factual differences will not defeat typicality.[53]

### 2.      No Allegations Made that Plaintiff did not Receive any Calls on her Home Phone

Finally, although Domino's focuses on the allegations made in the Complaint, specifically including allegations the plaintiff received messages on her cell phone, it presupposes allegations not in the Complaint.  In particular, Domino's claims the Complaint is clear plaintiff never received any phone calls on her home phone.[54]  However, no such allegation is made in the Complaint.  In fact, because Domino's and RPM possess all information related to the transmission of these messages, and no discovery has occurred, it is presently unknown if any messages were ever sent to plaintiff's home.  For this reason, at the very least, discovery is necessary to address this issue.  Moreover, Domino's should not be allowed to rely on alleged facts based on speculation.

### 3.      Plaintiff and the Class all Maintain an Identical Claim for Defendants' Failure to Institute Procedures to Maintain Opt-Out List

In addition, although Domino's complains only about the home and cell phone calls, it ignores plaintiff's separate claim for the defendants' failure to institute procedures to maintain an opt-out list of persons who request removal from the call list.  This claim, based

---

[53] *Id.*

[54] See Domino's Memorandum in Support of its Motion to Dismiss, R.Doc. 63-2, at p. 13.

22

on 47 C.F.R. 64.1200(d),[55] is identical to all class members.  In particular, it allows for the recovery of identical damages and the defenses to liability as to each class member are identical.  At the very least, plaintiff has standing to assert claims for cell phone calls and 47 C.F.R. 64.1200(d) violations.

## III.    CONCLUSION

For the foregoing reasons Domino's Motion to Dismiss should be denied.  In the alternative, plaintiffs requests denial of the Motion to conduct discovery on the various issues raised by Domino's.  In the further alternative, plaintiff seeks the opportunity to amend her Complaint.

RESPECTFULLY SUBMITTED,

**KEOGH, COX & WILSON, LTD.**

BY:____s/Christopher K. Jones_____
JOHN P. WOLFF, III, Bar #14504
CHRISTOPHER K. JONES, Bar #28101
701 Main Street
Baton Rouge, Louisiana  70802
Telephone:  (225) 383-3796
Facsimile: (225) 343-9612
jwolff@kcwlaw.com
cjones@kcwlaw.com

-and-

---

[55] See plaintiff's Second Supplemental and Amending Complaint, R.Doc. 46-2, at ¶¶ 39-41.

23

Philip Bohrer, Bar #14089
BOHRER LAW FIRM, L.L.C.
8712 Jefferson Highway, Suite B
Baton Rouge, Louisiana 70809
Telephone: (225) 925-5297
phil@bohrerlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all known counsel by operation of the court's electronic filing system. I also certify that, as of the date of this mailing, there are no manual recipients identified to receive this mailing.

Baton Rouge, Louisiana, this 24th day of November, 2010.


_____s/Christopher K. Jones_____
JOHN P. WOLFF, III
CHRISTOPHER K. JONES

24