UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TONI SPILLMAN

VERSUS

RPM PIZZA, LLC, ET AL

CIVIL ACTION

NUMBER 10-349-BAJ-SCR

**<u>RULING ON MOTION FOR AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF COSTS, AND INCENTIVE PAYMENT</u>**

Before the court is a Motion for Award of Attorneys' Fees, Reimbursement of Costs, and Incentive Payment. Record document number 232.

This motion was filed pursuant to the Order of Preliminary Approval of Proposed Settlement and Notice of Certification Order filed on November 9, 2012.[1] In support of the motion, class counsel filed a supporting memorandum,[2] the declarations of class counsel Christopher K. Jones and Philip Bohrer,[3] the affidavit of Glenn A. Mueller, Jr., the expert report of Alexander J. Hoinsky, the cost estimate of the notice program, the cost estimate for claims administration, a February 15, 2013 email from a class member, and copies of settlement agreements and final judgments from two Telephone Consumers Protection Act ("TCPA"), 47 U.S.C. §

---

[1] Record document number 227.

[2] Record document number 232-1.

[3] Record document numbers 232-11 and 232-12, Exhibits 10 and 11.

227, et seq., class action settlements from cases in California district courts.[4] The curriculum vitae of class counsel Jones, Bohrer, and John P. Wolff, III, along with documents detailing the time spent by class counsel, the other attorneys of the firms and their staff, and the litigation expenses and costs, were all submitted for the court to review *in camera*.

Class counsel requested $3,000,000 in attorneys' fees and litigation costs for their work in litigating this case and securing a class action settlement with defendants RPM Pizza, LLC, Domino's Pizza LLC and Argonaut Insurance Company. The incentive payment requested for the class representative's time and effort assisting with the case is $5,000. In the Settlement Agreement the defendants agreed not to oppose an award of fees and costs that does not exceed $3,000,000.[5]

Based on the applicable law and the analysis that follows, the court finds that the documents and exhibits support approval of the request for the incentive payment to the class representative of $5,000. However, a reduction of the $3,000,000 total requested for attorneys' fees and litigation costs is warranted when the

---

[4] Record document numbers 232-1 through 232-10, Exhibits 1 through 9. Class counsel noted that RPM agreed to pay from the Common Fund the notice expert/plan costs and costs of the claims administration. Record document number 232-1, Memorandum in Support, p. 12.

[5] Record document number 222-3, Exhibit A, p. 35, section IX, ¶ 9.1.

percentage of the Common Fund is informed by the *Johnson* factors to ensure the award of a reasonable fee in this case.

## Applicable Law

Rule 23(h), Fed.R.Civ.P. provides in pertinent part that "[i]n an action certified as a class action, the court may award reasonable attorney fees and nontaxable costs authorized by law or by agreement of the parties." The court has a duty under Rule 23 to protect absent class members and supervise class actions. This duty is not limited to a review of the substantive claims included in the settlement agreement. To fulfill its duty to review and approve class action settlement agreements, the court is obligated to explore the manner in which fees of class counsel are to be paid and the reasonableness of the amount paid for their services. *In re High Sulfur Content Gasoline Products*, 517 F.3d 220 (5th Cir. 2008); *Strong v. BellSouth Telecommunications, Inc.*, 137 F.3d 844, 849 (5th Cir. 1998). The purpose of this requirement is to protect the nonparty members of the class, and minimize conflicts between the attorneys and the class, and the named plaintiffs and the absentees. *Id*. The court's examination of attorneys' fees also guards against the public perception that attorneys use the class action to obtain large fees at the expense of the class. *Id.*, citing, *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 820 (3d Cir. 1995).

The court is not bound by the agreement of the parties as to

the amount of attorneys' fees. Furthermore, the fact that a defendant will pay the fees from its own funds does not limit the court's obligation to review the reasonableness of the agreement as to fees. *Strong*, 137 F.3d at 849-50.[6] "Even when the district court finds the settlement agreement to be untainted by collusion, fraud, and other irregularities, the court must thoroughly review the attorneys' fees agreed to by the parties in the proposed settlement agreement." *Id.*, at 850. To fulfill its duty, the court must not cursorily approve the fee provision of a class settlement or delegate that duty to the parties. *In re High Sulfur Content,* 517 F.3d at 228.

In a securities fraud class action settlement case, *Union Asset Management Holding A.G., v. Dell, Inc.,*[7] the Fifth Circuit recently addressed the calculation of attorneys' fees in common fund cases. The court stated as follows:

> In common fund cases, courts typically use one of two methods for calculating attorneys' fees: (1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its

---

[6] For the court to do only a perfunctory review under these circumstances would ignore the economic reality that a settling defendant is concerned only with its total liability. *Strong*, *supra*, *citing*, *In re GM Trucks*, 55 F.3d at 819-20; *Foster v. Boise-Cascade, Inc.*, 420 F.Supp. 674, 687-88 (S.D.Tex. 1976), *aff'd*, 577 F.2d 335 (5th Cir. 1978); *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir. 1991).

[7] 669 F.3d 632, 642-45 (5th Cir. 2012).

4

>discretion, applying an upward or downward multiplier. The Fifth Circuit has never explicitly endorsed the percentage method for common fund cases, and we are the only circuit yet to do so. Still, the Fifth Circuit has been amenable to its use, so long as the *Johnson* framework is utilized to ensure that the fee awarded is reasonable. Indeed, district courts in this Circuit regularly use the percentage method blended with a *Johnson* reasonableness check, and for some it is the preferred method. (internal footnotes and quotations omitted).

*Union Asset Management*, 669 F.3d at 642-643.

The court also noted the advantages of the percentage method - more predictable and easy to compute, encourages settlement, and aligns the interests of class counsel with those of the class members by reducing the incentive to protract the litigation. *Id.* at 643. Ultimately, the Fifth Circuit endorsed the district courts' continued use of the percentage method cross-checked with the *Johnson* factors, and specifically stated:

>We join the majority of circuits in allowing our district courts the flexibility to choose between the percentage and lodestar methods in common fund cases, with their analysis under either approach informed by the *Johnson* factors.

*Id.*, at 644.

The lodestar method requires multiplication of the number of hours reasonably expended by the reasonable hourly rate, to yield the lodestar figure. *See*, *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006). After the court calculates the lodestar, the court must scrutinize the award under the *Johnson* factors and not merely ratify a pre-arranged compact.

5

*In re High Sulfur Content*, 517 F.3d at 228. The lodestar may be adjusted upward or downward based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*:[8] (1) the time and labor required, (2) the novelty and difficulty of the issues, (3) the skill required to perform the legal services properly, (4) the preclusion of other employment, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. Nevertheless, the lodestar may be adjusted by a *Johnson* factor only if that factor is not already taken into account by the lodestar. *Strong*, 137 F.3d at 850. Factors one through four and six through nine are generally already taken into consideration in the lodestar calculation. *Heidtman v. County of El Paso*, 171 F.3d 1038 (5th Cir. 1999); *Matter of Fender*, 12 F.3d 480 (5th Cir. 1994); *Walker v. U.S. Dept. of Housing*, 99 F.3d 761, 771-72 (5th Cir. 1996).

## Analysis

**Attorneys' Fees and Reimbursement of Costs**

In accordance with the Fifth Circuit case law and recent

---

[8] 488 F.2d 714, 717-19 (5th Cir. 1974).

decision in *Union Asset Management,* the court finds that the best method for determining a reasonable award for attorneys' fees and expenses in this case is to determine a reasonable percentage of the Common Fund, cross-checked and informed by the *Johnson* factors.

Class counsel in this case seek a total of $3,000,000 in attorneys' fees and expenses incurred in the litigation. Counsel essentially urged the court to use the percentage method cross-checked with the *Johnson* factors, and argued that under any compensation method the $3,000,000 is reasonable and should be awarded by the court.

Addressing the first step in determining a reasonable percentage of the fund, counsel stated that the multiple components of the settlement have a maximum value of $32,200,000 and a minimum value of at least $20,700,000, which justifies the requested $3,000,000, an amount "equal to between 10-15% of the settlement value."[9] The components included in the value of the settlement relied on by class counsel were: (1) a Common Fund of $9,750,000 created by the Settlement Agreement[10] and from which the cash payments to the Monetary sub-class will be paid ($15 X 314,231 class members in the Monetary sub-class = $4,713,465, the total

---

[9] Record document number 232-1, p. 8.

[10] Record document number 222-3, Settlement Agreement, ¶4.1. An initial $4,000,000 deposit in the fund will be made by Argonaut and RPM, with Argonaut required to deposit $3,000,000 of it. ¶ 4.2 and 4.3.

7

maximum value of the cash benefits to this sub-class); (2) a total settlement value to the Merchandise sub-class of $10,776,968.95, which otherwise would have received nothing (the average value of a large one-topping pizza based on the Mueller affidavit X 1,152,617 members of the sub-class); (3) the value of the injunctive relief obtained in the settlement, based either on a figure of $700,000,000 (calculated by multiplying the TCPA statutory penalty of $500 times the total number of class members), or in the alternative, an expert evaluation of the costs associated with receiving a robo-call, which according to the Hoinsky report has an estimated value of $16,200,000; and, (4) the Settlement Agreement which requires RPM to pay the notice and claims administration costs of at least $434,081.71 from the Common Fund.

Based on these elements, class counsel argued that the minimum value of the settlement is $20,700,000 (the value of injunctive relief estimated by the Hoinsky report at $16,200,000 + the initial $4,000,000 deposit to the Common Fund + the notice and claims administration costs of $434,000). If the maximum amount of cash benefits to the Monetary sub-class ($4,700,000) and Merchandise voucher sub-class ($10,700,000) are added in, the settlement value increases to a maximum of $32.2 million.

Therefore, counsel argued that the request for $3,000,000 in attorneys' fees and litigation costs is clearly reasonable as it amounts to a percentage award of between 10% and 15% of these

settlement values. Counsel maintained that these percentages are reasonable given the size of this class action and the benefits received by the class members, and as compared to common benefit fee percentages awarded in other TCPA class action settlement cases in this and other districts.

Initially, the court finds that class counsels' statement of the value of the common fund on which they estimate the percentage of the common fund is inconsistent with the method used in the other TCPA cases cited in their memorandum.[11] A review of these cases shows that the percentage of the common fund is generally based on the amount of the class settlement fund as it is defined in the settlement agreement.

In this case the Settlement Agreement provides for a Common Fund totaling $9,750,000.[12] Therefore, counsels' request for an award of attorneys' fees and litigation expenses of $3,000,000, is approximately 31% of the value of the Common Fund established by the Settlement Agreement. The TCPA class action settlement cases relied on by the plaintff had common benefit fee percentages that ranged from 16% to 36.5%, with the majority being either 25% or 33 1/3%. Therefore, on initial review, an award of fees and costs that is 31% of the Common Fund is within this range, albeit on the

---

[11] Record document number 232-1, pp. 18-19.

[12] Record document number 222-3, Exhibit A, p. 16, section IV, ¶ 4.1.

high end.

However, there is a gap between the total of the fees and costs supported by the declarations and documents and the $3,000,000 requested by class counsel. When the total fees requested for all class counsel and supporting attorneys and staff, along with the litigations costs[13] submitted, are added together they total $2,716,022.46. This amount does not include fees for 62 hours of work on the motion for fees and costs, any amount for the work class counsel did to prepare for and attend the fairness hearing, or any amount to perform all the future work necessary to monitor and administer the settlement and bring it to a final resolution.

Based on the information in class counsel's declaration and the exhibits, the fee request for the work done on this motion totals $23,356.25, and an estimate of the attorney and paralegal fees for future work on the settlement is approximately $90,000.[14] When these two amounts are added to $2,716,022.46, the total is $2,829,378.71 which is $170,621.29 short of the $3,000,000 requested. It would not be reasonable to award $170,621.29 in fees and costs which are not supported by anything in the record. Thus,

---

[13] The litigation costs submitted for approval totaled $40,048.71. (Declaration of Christopher Jones, Exhibit E, ($37,632.43), and Declaration of Philip Bohrer, Exhibit C, ($2416.28)).

[14] Declaration of Jones, ¶¶ 31, 39-44, Exhibit D.

an initial reduction of the $3,000,000 requested by this amount ($170,621.29) is warranted, and doing so reduces the fees and costs percentage of the $9,750,000 Common Fund to 29%.

In light of other cases, a percentage of 29% is not unreasonable. Nevertheless, a reasonableness check of this percentage, informed by the *Johnson* factors,[15] requires an additional downward adjustment of the percentage for the following reasons:

1. With regard to the factor of reasonable hourly rates, class counsel included in their declarations and supporting documents statements that the hourly rates for class counsel and the firm's partners who worked on the case were $400 and $375. The rates for associate attorneys were either $150 or $200 per hour, the hourly paralegal rate was $125 per hour, and the hourly law clerk rate was $100 per hour. Jones and Bohrer both stated in their declarations that these were the usual and customary rates set by the firm.

Class counsel did not supply any affidavits or other information to indicate the reasonable range of hourly rates in the local legal community for this type of litigation. The cases cited by class counsel were not from the Middle District, but from the Eastern District of Louisiana.[16] Based on the court's experience,

---

[15] All the *Johnson* factors have been considered even if not specifically mentioned in the following analysis.

[16] Memorandum in Support, p. 26. In the case of *Altier v.*
(continued...)

and evidence in this and other cases, hourly rates of $400 and $375 are above the highest hourly rates sought and/or awarded in recent years.

For example, in this case defendant RPM submitted information in connection with an award of attorney's fees under Rule 37(a)(5).[17] In connection with that request for fees and costs a declaration and other information were submitted by RPM's attorney. The attorney, who is a partner with 20 years of experience, sought an hourly rate of $250.[18] In late 2008, the issue of reasonable hourly rates for attorneys litigating complex class actions was addressed in a motion for common benefit attorneys' fees and costs in the cases consolidated with Civil Action Number 04-611-SCR, *In the Matter of the Complaint of Kirby Inland Marine, L.P.* In that case co-lead counsel testified that a reasonable range for the hourly rates in the Baton Rouge community for similar work would be $150 for less experienced attorneys, and would go up to $275 an

---

[16](...continued)
*Worley Catastrophe Response, LLC*, 2012 WL 161824 (E.D. La. 2012), cited by class counsel, the relevant legal market was the Eastern District of Louisiana. The court stated that in that market, hourly rates from $350 to $400 an hour were on the high end of the range of prevailing market rates for lawyers with comparable experience and expertise in that type of litigation.

[17] Record document number 203.

[18] *Id.,* Declaration of Shelton Dennis Blunt, July 10, 2012, ¶ 12. Counsel stated the rates were standard and based on their experiences and backgrounds, as determined by the firm of Phelps Dunbar, relative to the Baton Rouge legal community in which the firm operates.

hour for more knowledgeable and experienced attorneys.  Therefore, he stated that a blended hourly rate of $200 would be reasonable to compensate the attorneys for the common benefit work each performed.  Based on the court's involvement in that case and in recommending awards of attorneys fees in this district, the court accepted and set $200 as the reasonable hourly rate to compensate the attorneys for the common benefit work each performed.[19]

Given the hourly rate of experienced defense counsel submitted in connection with another motion in this case, the testimony and hourly rate set in CA 04-611-SCR, and based on the court's involvement in this case and in recommending fee awards in this district, the hourly rates that range from $150 to $200 are reasonable,[20] but the $400 and $375 hourly rates for class counsel are excessive.  Rather, an hourly rate of $300 is reasonable for this case and is adequate for lead counsel doing this type of class action litigation in this community.[21]

---

[19] Record document number 488, Civil Action No. 04-611-SCR (lead case).

[20] The hourly rates for paralegal and law clerk time are on the high end, but reasonable.

[21] A reasonable hourly rate should be in accord with rates prevailing in the community for similar services by attorneys of reasonably comparable skill, experience and reputation.  The relevant legal community is the one in which the district court sits.  In addition to the community rate, the district court must also consider the attorney's regular rates. *See*, *In re Enron Corp. Securities*, 586 F.Supp.2d 732, 755 (S.D. Tex. 2008).  While the court cannot simply rely on its experience to set a reasonable
(continued...)

2. With regard to the number of hours reasonably expended, a review of class counsel's declarations and the time records show that some reduction in also warranted for lack of evidence of billing judgment. Although Jones and Bohrer stated that they reviewed the records and made reductions to both time and expenses in the exercise of billing judgment, they did not provide any specific information to support this statement.

The time records generally show that the amount of time spent on substantive matters was reasonable. However, a review of the time records for the firm of class counsel Jones and Wolff shows that duplicate and excessive time (.25 of an hour) was consistently entered to review routine matters such as text-entry-only orders, minute entries, and one or two paragraph orders such as orders to enroll counsel, granting leave to file memoranda, amendments to scheduling orders, granting motions for expedited hearings, and granting motions to enroll and substitute counsel.[22] Reading and reviewing these would only take a few seconds to at most a minute

---

[21](...continued) hourly rate, the court may look to its own knowledge and experience in establishing a reasonable rate. See, *League of United Latin Am. Citizens v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1234 (5th Cir. 1997); *Hagan v. MRS Associates, Inc.*, 2001 WL 531119 (E.D. La. May 15, 2001).

[22] Declaration of Jones, Exhibit C, record of time expended and work performed by class counsel, other attorneys and staff of Keogh, Cox & Wilson, Ltd. Examples of this billing are seen in many of the entries where the time listed is .25.

or two – not a quarter of an hour.[23]

3. Finally, the issue of the requested multiplier must be examined. Class counsel stated that a multiplier of three is appropriate and should be used in this case based on: (1) significant benefits achieved for 1.5 million class members in the face of Domino's filing a dispositive motion, and the court's dismissal of the claims of the members of the Merchandise Voucher sub-class; (2) injunctive relief that will protect the class from future illegal telephone calls from the defendants; (2) the amount of future work and expenses needed to implement the settlement and bring it to a close; (3) class counsel taking the case on a contingency basis, when the case involved difficult and uncertain legal issues and there was a substantial risk that they would not recovery anything; (4) the litigation was complicated by insurance coverage issues and defendant RPM's financial situation; (5) protracted litigation, mediation, and negotiations before an agreement was finally reached three years after the case was filed.

A multiplier is justified in this TCPA case, but not the multiplier of three that counsel argued is appropriate. A multiplier is warranted in this case insofar as: (1) counsel assumed a significant risk of not recovering anything by taking the case on a contingency basis, given the uncertain factual and legal

---

[23] In comparison, a review of the time records from class counsel from the Bohrer Law Firm routinely showed a .10 time entry for similar activity. Declaration of Bohrer, Exhibit B.

issues involved; (2) the litigation and negotiations were protracted, mainly because of the strong defenses asserted by Domino's and RPM and the insurance coverage issues; and, (3) benefits were obtained for the Mercandise Voucher sub-class, even though as the record stands now their claims are dismissed. However, the future work required of class counsel has already been taken into account, and there is nothing exceptional about the injunctive relief included in the settlement agreement.[24] Furthermore, the cases relied on by class counsel that awarded multipliers greater than three were mega-fund cases and were not similar to this TCPA class action.[25] Thus, a lower multiplier is appropriate in this case, rather than the multiplier of three requested by class counsel.

As discussed above, the higher hourly rates, the time expended, and the multiplier sought by class counsel are not entirely supported by the record. Consequently, some reduction to the fees and costs sought as a percentage of the fund is

---

[24] Settlement Agreement, ¶ 4.17.

[25] Record document number 232-1, p. 27. The mega-fund cases cited by class counsel were *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1055 (9th Cir. 2002)(multiplier of 3.65), and *In re Enron Corp. Sec. Derivative & ERISA Litig.*, 586 F.Supp.2d 732, 798 (S.D. Tex. 2008)(multiplier of 5.2). The other cases cited were *Altier*, *supra*, where the court approved a 2.17 multiplier for extraordinary results in an FLSA case, and *In re Educational Testing Services,* 447 F.Supp.2d 612, 633 (E.D.La. 2006), where the court approved a multiplier of 1.6 where only two of the *Johnson* factors warranted an increase.

appropriate. A reduction from 29% to 26% of the $9,750,000 Common Fund is an adequate reduction to account for these factors. Calculation of 26% of the Common Fund results in a reasonable attorneys' fee and costs award of $2,535,000.

**Incentive Payment**

Class counsel's final request in this motion is for approval of an incentive payment award to the class representative in the amount of $5,000. Counsel stated that the award is appropriate for the time Spillman dedicated to assisting in the litigation by: (1) providing and gathering facts for the case, and assisting in the preparation of the complaints; (2) collecting documents and providing responses to the defendants' discovery requests; (3) receiving updates to be informed of the progress of the litigation and settlement negotiations; and, (4) reviewing and approving the settlement.

Review of the time records submitted by class counsel supports the statements regarding the time and effort Spillman expended to represent the class. Therefore, an incentive payment of $5,000 is a reasonable award for her time and effort as the class representative.

## Conclusion

Accordingly, the Motion for Award of Attorneys' Fees, Reimbursement of Costs, and Incentive Payment is granted in accordance with the findings above: (1) class counsel Christopher

17

K. Jones and John P. Wolff, III of the firm of Keogh, Cox & Wilson, Ltd. and Philip Bohrer of the Bohrer Law Firm, LLC are awarded reasonable attorneys' fees and reimbursement of costs of 26% of the Settlement Fund of $9,750.00, for a total of $2,535,000; and (2) class representative Toni Spillman is awarded an incentive payment of $5,000.

At an appropriate time the court will issue an order authorizing the payment of the attorneys' fees and costs and the plaintiff's incentive payment from the Common Fund.

Baton Rouge, Louisiana, May 23, 2013.

*Stephen C. Riedlinger*

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE